**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Foster,

                                    Plaintiff,

                - *against* -

UPS Freight, Inc.,[1]

                                    Defendant.

18CV1706 (NSR)(LMS)

**DECISION AND ORDER**

Foster,

                                    Plaintiff,

                - *against* -

United Parcel Service of America, Inc.,

                                    Defendant.

18CV10294 (NSR)(LMS)
18CV10925 (NSR)(LMS)
19CV6501 (NSR)(LMS)

**REPORT AND
RECOMMENDATION**

**TO:  THE HONORABLE NELSON S. ROMÁN, U.S.D.J.**

        Currently before the Court are motions to dismiss filed by Defendant United Parcel

Service of America, Inc. ("UPSA") (Docket # 25, 18CV10294; Docket # 24, 18CV10925;

Docket # 23, 19CV6501), Plaintiff's motion for leave to amend (Docket ## 60, 63, 70-71, 74-75,

18CV1706), and Defendant UPSA's motion for sanctions (Docket # 30, 18CV10294; Docket #

---

[1] The first action, 18CV1706, originally named two defendants, United Parcel Service of America, Inc., and UPS Freight, Inc., but in accordance with the parties' joint stipulation filed on April 27, 2018, United Parcel Service of America, Inc. was dismissed from the action with prejudice, and the parties stipulated that UPS Ground Freight, Inc., referred to as UPS Freight, Inc. in the action, was Plaintiff's employer and the "true and correct Defendant."  Docket # 14, 18CV1706.  Nonetheless, the other three actions, even though they were filed after the joint stipulation, all name as the sole defendant United Parcel Service of America, Inc.

28, 18CV10925; Docket # 26, 19CV6501) in four related actions brought by Plaintiff against his employer.  The first of these actions, Foster v. UPS Freight, Inc., 18CV1706 ("Foster I"), was commenced in New York state court on January 10, 2018, and removed to this Court on February 23, 2018.  Docket # 1, 18CV1706.  The second action, Foster v. United Parcel Service of America, Inc., 18CV10294 ("Foster II"), was commenced in this Court on November 6, 2018. Docket # 1, 18CV10294.  The third action, Foster v. United Parcel Service of America, Inc., 18CV10925 ("Foster III"), was commenced in New York state court on November 6, 2018, and removed to this Court on November 21, 2018.  Docket # 1, 18CV10925.  The fourth and final action, Foster v. United Parcel Service of America, Inc., 19CV6501 ("Foster IV"), was commenced in this Court on July 12, 2019.  Docket # 1, 19CV6501.[2]  All of the actions involve allegations of disability-based discrimination and retaliation during Plaintiff's employment as a driver for UPS Ground Freight, Inc. ("UPSF").

    The Court shall address the motions to dismiss by way of a Report and Recommendation and the motions for leave to amend and for sanctions by way of a Decision and Order.  For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant UPSA's motions to dismiss should be granted in part and denied in part, and Plaintiff should be allowed an opportunity to re-plead UPSA's single employer liability on his claims in Foster II and Foster IV.  If Plaintiff's attempt to re-plead single employer liability fails, then I conclude, and respectfully recommend that Your Honor should conclude, that Foster II and Foster IV should be dismissed.  In addition, based on my decision on the motion for leave to

---

[2] Plaintiff erroneously filed only a request for issuance of a summons on July 12, 2019, and did not file the complaint until July 15, 2019.  Docket # 5, 19CV6501.

amend, I conclude, and respectfully recommend that Your Honor should conclude, that <u>Foster III</u> should be dismissed.  Lastly, I conclude, and respectfully recommend that Your Honor should conclude, that the remaining three cases (assuming that <u>Foster II</u> and <u>Foster IV</u> survive dismissal) should be consolidated and stayed pending Plaintiff's exhaustion of administrative remedies before the EEOC with respect to his proposed new ADA claims concerning the events of December, 2019, January, 2020, and April, 2020.

With respect to Plaintiff's motion for leave to file a fourth amended complaint in <u>Foster I</u>, for the reasons that follow, the motion is granted in part and denied in part, and the complaint in <u>Foster I</u> shall be amended to include only Plaintiff's New York Human Rights Law claims, including those from <u>Foster III</u> that are based on events that occurred after the first amended complaint was filed in <u>Foster I</u>, <u>i.e.</u>, the events of July, 2018, as well as those based on the events of December, 2019, January, 2020, and April, 2020.

With respect to Defendant UPSA's motion for sanctions, for the reasons that follow, the Court denies the motion.

## <u>BACKGROUND</u>

The situation presented by these motions has been complicated by the parties' actions.  In November, 2018, Plaintiff could have, in accordance with the court-ordered briefing schedule, made a motion to further amend his first amended complaint in <u>Foster I</u> and brought all of the claims in <u>Foster I</u>, <u>Foster II</u>, and <u>Foster III</u> in one action, but he instead chose to file two additional lawsuits.  Even after filing the two additional lawsuits, Plaintiff could have subsequently moved to amend the complaint in <u>Foster III</u> to add the claims in <u>Foster IV</u>, but he instead chose to file a fourth lawsuit.  Now, he finally seeks leave to amend the first amended complaint in <u>Foster I</u> both to streamline this litigation and to add new factual allegations, giving

rise to additional claims, some of which have yet to be exhausted before the EEOC.  Meanwhile,

Defendants UPSA and UPSF have chosen to oppose Plaintiff's attempts to amend without

motion practice, which has contributed to Plaintiff's decision to file multiple lawsuits.

Although Plaintiff has brought four different actions, they fall into two groups:  (1) Foster

I and Foster II,[3] which are based on the same factual allegations, with the original complaint in

Foster I asserting claims under the New York Human Rights Law ("NYHRL"), and the

complaint in Foster II asserting claims under the federal Americans with Disabilities Act

("ADA"); and (2) Foster III and Foster IV, which are based on the same factual allegations, with

Foster III asserting claims under the NYHRL and state common law and Foster IV asserting

claims under the ADA.  In all cases, Plaintiff alleges that he worked as a tractor trailer driver, but

due to his disability of having suffered a traumatic brain injury in his youth, he required the

reasonable accommodation of additional time and sometimes repetitive instructions if there was

a change in his route.  In Foster I, Plaintiff stipulated to proceeding against UPSF as the sole

defendant.  In Foster II, Foster III, and Foster IV, Plaintiff named only UPSA as the sole

defendant.

The more specific factual allegations then break down into roughly two groups.  Both the

original complaint in Foster I and the complaint in Foster II involve allegations concerning

Plaintiff's constructive termination on November 10, 2017.  The original complaint in Foster I

asserts only two claims:  (1) discrimination in violation of the NYHRL, and (2) retaliation in

violation of the NYHRL.  On June 20, 2018, Plaintiff filed a first amended complaint in Foster I

---

[3] The Court orders the cases in accordance with the dates on which they were filed in federal
court.  In contrast, Defendants UPSA and UPSF refer to the earlier filed case, 18CV10294, as
Foster III, and the later filed case, 18CV10925, as Foster II.

that incorporates some additional factual allegations based on events that occurred between the filing of that action in January, 2018, and June 12, 2018, when Plaintiff alleges that he was once again constructively terminated from his employment.  Docket # 25, 18CV1706.  These new factual allegations overlap with allegations in Foster III, although the complaint in Foster III alleges that Plaintiff continued in his employment after June 12, 2018, and was instead terminated on July 10, 2018, based on the pretext that he failed to report a minor accident.  Docket # 1, 18CV10925.  As initially filed, the first amended complaint in Foster I included a number of new claims:  (1) discrimination in violation of the ADA, (2) violation of Plaintiff's right to health coverage under COBRA, (3) violation of the Labor Management Relations Act, and (4) a state law claim of wrongful infliction of emotional distress.  Docket # 25, 18CV1706.  On July 18, 2018, the parties stipulated to the dismissal of the new ADA claim without prejudice, with Plaintiff reserving "all rights to seek to amend the Complaint upon receipt of the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission."  Docket # 29, 18CV1706.

On October 1, 2018, after having received the Notice of Right to Sue from the EEOC, Plaintiff attempted to file a second amended complaint in Foster I.  Docket # 31.  Since it was past the time for filing an amended pleading as of right, the filing was rejected.  See Docket Sheet, 18CV1706, Entry dated 10/02/2018.  At a telephonic status conference held on October 18, 2018, the undersigned set a briefing schedule for Plaintiff to file a motion for leave to amend the complaint:  Plaintiff's moving papers were to be served and filed by November 13, 2018, and the motion would be fully submitted by December 10, 2018.  Id., Minute Entry for 10/18/2018.

On November 21, 2018, Defendant UPSF wrote a letter to the Court to report that rather than filing a motion for leave to amend as ordered, Plaintiff had instead opted to file two new

actions "that contained the same facts and claims that he sought to bring in his amended complaint: (1) a state-court action alleging discrimination under the New York State Human Rights Law for events related to but occurring subsequent to those in the present complaint; and (2) a federal action alleging discrimination under the Americans with Disabilities Act based on the same events in the present complaint." Docket # 39, 18CV1706. The federal action, 18CV10294 (Foster II), which was brought against UPSA, had been filed on November 6, 2018, while the new state court action, 18CV10925 (Foster III), which was also brought against UPSA, was removed to federal court by UPSA on November 21, 2018. Defendant UPSF also informed the Court that Plaintiff had filed a new charge of discrimination with the EEOC which his counsel sent to Defendant's counsel[4] in a November 8, 2018, email and which was "based on events related to but occurring subsequent to those in the present [Foster I] complaint." Id.

Foster II, which was brought as a means of asserting Plaintiff's ADA claims after exhausting them before the EEOC without having to seek the Court's leave to further amend his first amended complaint in Foster I, only includes factual allegations up through December, 2017, related to Plaintiff's constructive termination on November 10, 2017, i.e., the factual allegations in the original complaint filed in Foster I. See Docket # 1, 18CV10294. The complaint in Foster II asserts two, identical claims of discrimination in violation of the ADA. Foster III, as noted above, is based on many of the same factual allegations as the first amended complaint in Foster I, except, most notably, it adds allegations that Plaintiff worked past June 12, 2018, and was not actually terminated until July 10, 2018. Docket # 1, 18CV10925. As Foster

---

[4] The same counsel represents both UPSA and UPSF.

III was commenced in state court, the complaint includes only three state law claims:  (1) discrimination in violation of the NYHRL, (2) retaliation in violation of the NYHRL, and (3) negligent infliction of emotional distress.  Id.  Finally, Plaintiff commenced Foster IV as a means of asserting the ADA claims that were presumably raised in the charge he filed with the EEOC and sent to Defendant's counsel on November 8, 2018, without having to seek the Court's leave to amend his complaint in Foster III.  See Docket # 5, 19CV6501 (Complaint) ¶ 8 ("This Complaint is related to an action removed to this court based upon diversity jurisdiction on November 21, 2018 Docket No. 18 CV 01706 [this is an erroneous reference to Foster I instead of Foster III] which had been filed in New York State Supreme Court on November 6, 2018 Index No. EF011070-2018.  This immediate action is commenced following Plaintiff's receipt on April 15, 2019 of the EEOC Right to Sue Letter relating to those same claims.").  Based on the same factual allegations as the complaint in Foster III, the complaint in Foster IV asserts only two claims:  (1) discrimination in violation of the ADA, and (2) retaliation in violation of the ADA.

In sum, the factual allegations in Foster II are completely subsumed within the factual allegations in Foster I; the factual allegations in the first amended complaint in Foster I are completely subsumed within the factual allegations in Foster III; and the factual allegations in Foster IV are completely subsumed within the factual allegations in Foster III.  In making its motions to dismiss Foster II, Foster III, and Foster IV, Defendant UPSA's primary argument is that these actions should all be dismissed as duplicative of Foster I.  Thus, Plaintiff stated in his original motion seeking leave to file a third amended complaint in Foster I (although no second amended complaint was ever accepted for filing) that he was doing so in an attempt to "facilitate all claims in one action."  Docket # 63, 18CV1706 ("Mot. to Amend") at 2 ("As part of Plaintiff's

opposition [to the motions to dismiss], Plaintiff references the proposed amendment of Foster I which will facilitate all claims in one action.  Leave is being sought to amend to fulfill such purpose.").  And although the proposed third amended complaint in Foster I purported to "facilitate all claims in one action," it included only claims for discrimination and retaliation in violation of the ADA and the NYHRL; abandoned the claims in the Foster I first amended complaint for violation of Plaintiff's right to health coverage under COBRA, violation of the Labor Management Relations Act, and state law wrongful infliction of emotional distress; and added entirely new factual allegations concerning events that occurred in December, 2019, and January, 2020, following the issuance of a decision in Plaintiff's union arbitration.  See generally Docket # 63-1, 18CV1706 ("Third Am. Compl."); id. ¶¶ 18, 36-39.

Plaintiff has since sought leave to add allegations concerning a further incident of discrimination and retaliation that occurred in April, 2020.  Accordingly, the Court has allowed Plaintiff to file a proposed fourth amended complaint in Foster I, see Docket Sheet, 18CV1706, Minute Entry for 06/30/2020, which is now the subject of Plaintiff's motion for leave to amend. The proposed fourth amended complaint likewise asserts only claims for discrimination and retaliation in violation of the ADA and NYHRL and includes the new factual allegations concerning events that occurred in December, 2019, and January, 2020, but it also adds allegations concerning events that occurred up through April, 2020.  See generally Docket # 75, 18CV1706 ("Fourth Am. Compl."); id. ¶¶ 11, 13, 21-22, 30-31, 56-66.

In its letter opposing the motion to file a fourth amended complaint, Defendant UPSF stated that it "opposes the Fourth Amended Complaint to the extent it seeks to add claims under the ADA based on recent facts arising out of the December 2019 arbitration decision to return Plaintiff to a road-driver position," on the ground that Plaintiff has failed to exhaust his

administrative remedies before the EEOC.  Docket # 72, 18CV1706 ("Amend Opp'n") at 2. Thus, to the extent that such claims are premature and cannot now be added in <u>Foster I</u>, it is inevitable that at some later point in time, upon exhausting the claims and receiving a Notice of Right to Sue from the EEOC, Plaintiff will (since he can no longer amend any of his complaints as of right) commence yet a fifth action asserting these new federal claims.

## DISCUSSION

## I.   Legal Standards

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully harmed-me accusation." <u>Id.</u>

When considering a defendant's Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2004) (citations omitted), and must draw all inferences from those allegations in the plaintiff's favor.  <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002).  However, a court is not required to accept as true legal conclusions, and "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949. Instead, to survive a motion to dismiss, a complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." <u>Id.</u> (internal quotation marks and citation omitted). A claim is facially plausible when the complaint contains enough facts to allow the court to reasonably infer that the defendant is liable for the alleged misconduct.  <u>Id.</u>  Put another way, a plaintiff must set forth enough facts to "nudge [his or her] claims across the line from

9

conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000).  "The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." Id.  The "rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or res judicata." Id.  But "[b]ecause of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." Id.  A court will also commonly dismiss the second suit "because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." Id. at 138-39.  The disposition of the second suit is "for the exercise of the district court's discretion in the comprehensive management of litigation in its court." Id. at 139.

     **B.**     **Motion for Leave to Amend**

Federal Rule of Civil Procedure 15(a) requires that a district court employ a liberal standard when considering a motion to amend.  See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  The Supreme Court has expounded upon Rule 15(a)'s liberality by suggesting that it is preferential for a plaintiff to be "afforded an opportunity to test his [or her] claims on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).  In Foman, the Supreme Court counseled that the textual directive of the Rule should be followed absent a showing of "undue delay, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [or] futility of [the] amendment."  Id.  The decision to grant or deny a motion to

amend rests within the sound discretion of the district court.  See McCarthy v. Dun & Bradstreet

Corp., 482 F.3d 184, 200 (2d Cir. 2007).

"The rule in [the Second] Circuit has been to allow a party to amend its pleadings in the

absence of a showing by the nonmovant of prejudice or bad faith."  Block v. First Blood Assocs.,

988 F.2d 344, 350 (2d Cir. 1993).  Prejudice to the nonmoving party may arise when the

proposed amendment causes the nonmoving party to "expend significant additional resources to

conduct discovery and prepare for trial," or when the proposed amendment causes significant

delay to the disposition of the original claim or claims.  Id.  Delay alone, however, is an

insufficient justification for the denial of a motion to amend.  Id.  The degree of potential

prejudice a motion to amend may cause is evaluated against the overall progress of the litigation:

the closer to the end of discovery or the closer to trial a motion to amend is filed, the more likely

that it will cause prejudice and delay to the nonmoving party.  See, e.g., GEM Global Yield Fund

Ltd. v. SurgiLight, Inc., 04 Civ. 4451, 2006 WL 2389345, at *11 (S.D.N.Y. Aug. 17, 2006)

(summarizing impact of motion to amend based upon timing of motion during litigation).

Application of these timing principles, however, does not always result in the denial of a motion

to amend, especially when it appears advantageous, efficient, and economical to resolve similar

disputes in a single proceeding.  Id. (highlighting value of resolving all disputes "in one

litigation").

Where a defendant opposes a plaintiff's amended pleading on the ground of futility of the

plaintiff's proposed new claims, leave to amend may be denied where the proposed claims

"could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  Dougherty v. Town of N.

Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted).  Under

those circumstances, the court considers the plaintiff's proposed new claims under the standard applicable to a motion to dismiss.

II.   <u>**Analysis**</u>

As noted above, the situation with which the Court is confronted is rather complicated, and the motions are substantially intertwined.  The Court will try to address them in as straightforward a manner as possible.

Defendant UPSF's opposition to the motion for leave to amend is basically two-fold:  (1) UPSF opposes the filing of the fourth amended complaint in <u>Foster I</u> "to the extent it seeks to add facts and claims that form the basis of Foster II, Foster III or Foster IV and that are currently the subject of a motion to dismiss," Amend Opp'n at 2; and (2) UPSF opposes the filing of the fourth amended complaint "to the extent it seeks to add claims under the ADA based on recent facts arising out of the December 2019 arbitration decision to return Plaintiff to a road-driver position[, since] Plaintiff has failed to exhaust his administrative remedies with respect to these claims as is required by the ADA."  <u>Id.</u>  Thus, resolution of the motions to dismiss is critical to the Court's determination of whether Plaintiff should be allowed to file his proposed fourth amended complaint in <u>Foster I</u>, keeping in mind that for the sake of judicial economy, it would be preferable to have all claims brought in one action.

A.   <u>**Motions to Dismiss**</u>

1.   **Duplicative Actions**

The principal argument raised in UPSA's motions to dismiss filed in <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u> is that those actions should be dismissed as duplicative of <u>Foster I</u>.  <u>Foster II</u>, which is based on the same factual allegations as the original complaint in <u>Foster I</u>, asserts two identical claims of discrimination in violation of the ADA after Plaintiff exhausted his

administrative remedies before the EEOC.[5]  "Yet courts dismissing duplicative claims have done

so where the claims not only arise out of a common nucleus of operative fact, but where the

claims also accrue at the same time or at least within the period where amendment as of right is

still available."  <u>Murray v. UBS Securities, LLC</u>, No. 14 Civ. 927(KPF), 2015 WL 769586, at *4

(S.D.N.Y. Feb. 24, 2015).  Furthermore, "[a]lthough the doctrine of duplicative suits is 'distinct'

from that of claim preclusion, they share a related insight that a plaintiff cannot be precluded

from litigating a claim on the basis of an earlier claim where, for factual or procedural reasons,

he [or she] could not bring the later claim at the same time as the earlier claim."  <u>Id.</u> (quoting

<u>Curtis</u>, 226 F.3d at 138).  Here, Plaintiff's ADA claims in <u>Foster II</u> could not have been brought

at the same time as his claims in <u>Foster I</u>, but rather had to await exhaustion of his administrative

remedies before the EEOC.  Therefore, those claims, which did not accrue until Plaintiff

received his notice of right to sue from the EEOC in August, 2018,[6] after the June 15, 2018,

deadline for amendment as of right, <u>see</u> Docket # 17, 18CV1706, are not dismissible as

duplicative of the claims in <u>Foster I</u>.  See <u>Murray</u>, 2015 WL 769586, at *4 ("[T]he claims

brought here could not have been brought in the earlier action because a procedural bar existed to

filing immediately in federal court.  Plaintiff's Sarbanes–Oxley claim did not accrue until after

the 180–day period had run, and Plaintiff's CFPA claim did not accrue until after the 210–day

period had run.").

---

[5] The Court assumes, without knowing, that this was a mistake and that Plaintiff intended to bring one claim of discrimination and one claim of retaliation.

[6] Plaintiff's notice of right to sue in <u>Foster II</u> was issued on August 27, 2018, Docket # 31, 18CV10294 ("Ranni Decl.") Ex. 10.

With respect to <u>Foster III</u> and <u>Foster IV</u>, the factual allegations in those suits are duplicative of the first amended complaint in <u>Foster I</u> in virtually all material respects except for the factual allegations related to Plaintiff's pretextual termination in July, 2018, and the claims arising therefrom.  As the Second Circuit in <u>Curtis</u> noted, "While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit."  226 F.3d at 139 (citation omitted).[7]  "The crucial date is the date the complaint was filed.  The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims."  <u>Id.</u> (citation omitted).  Therefore, as in <u>Curtis</u>, although the claims in <u>Foster III</u> arising out of the same events as those alleged in <u>Foster I</u> are dismissible as duplicative, the claims of discrimination, retaliation, and negligent infliction of emotional distress—to the extent that they are based on the events in July, 2018—are not.  <u>See id.</u> at 140 ("Because claim preclusion would not bar litigation of events arising after the first amended complaint was filed in <u>Curtis I</u>, it was an abuse of the district court's discretion to dismiss those claims as duplicative.  Plaintiffs would be entitled to bring them after the conclusion of <u>Curtis I</u>, and we see no reason why they may not bring them while <u>Curtis I</u> is still pending.").  With respect to <u>Foster IV</u>, not only are the federal claims of discrimination and retaliation not dismissible to the extent they are based on the events of July, 2018, but, as with <u>Foster II</u>, those claims in <u>Foster IV</u> are not dismissible for the additional

---

[7] Although there are some additional factual allegations concerning events that occurred on March 20, April 18, and June 6, 2018, in the <u>Foster III</u> and <u>Foster IV</u> complaints, <u>see</u> Docket # 1-1, 18CV10925 ("<u>Foster III</u> Compl.") ¶¶ 17-18; Docket # 5, 19CV6501 ("<u>Foster IV</u> Compl.") ¶¶ 22-23, these are allegations that could have been included in the first amended complaint filed as of right in <u>Foster I</u>, and they simply provide additional underlying factual support for the claims already asserted in <u>Foster I</u>.

reason that they could not have been brought until Plaintiff exhausted his administrative remedies before the EEOC and thus, could not have been brought even in <u>Foster III</u>.

In sum, to the extent that Defendant UPSA seeks dismissal of <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u> as duplicative of <u>Foster I</u>, for the reasons stated above, these actions are not dismissible in their entireties. Rather, even taking into account the duplicative factual allegations in <u>Foster III</u> and <u>Foster IV</u> that are dismissible, the four separate actions would still remain, albeit with <u>Foster III</u> and <u>Foster IV</u> substantially narrowed to assert claims based only on the events that occurred in July, 2018. Thus, the Court shall proceed to address the other arguments made in the motions to dismiss.[8]

### 2. Wrong Defendant

Defendant UPSA additionally challenges <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u> as having been brought against the wrong defendant, since Plaintiff stipulated in <u>Foster I</u> that UPSF is his employer. In opposition to the motions to dismiss, Plaintiff argues that UPSA is a proper defendant because "UPS Ground Freight, Inc. is a wholly owned subsidiary of UPS[9] and nominal employer while UPS is the single employer of Plaintiff." Docket # 29, 18CV10294 ("Mem. in Opp'n") at 10.[10] Indeed, in its disclosure statement filed pursuant to Fed. R. Civ. P. 7.1 in <u>Foster I</u>, UPSF states that "it is a wholly-owned subsidiary of Defendant United Parcel

---

[8] If duplicative allegations alone were the only basis for Defendant UPSA's motions to dismiss <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u>, the problem could simply be rectified by allowing for the filing of a fourth amended complaint in <u>Foster I</u>, so that all the claims Plaintiff wishes to assert based on the same set of facts could proceed in one action.

[9] Plaintiff refers to UPSA as UPS.

[10] Plaintiff filed the same memorandum of law in opposition to all of the motions to dismiss filed in <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u>.

Service of America, Inc., which is a wholly-owned subsidiary of United Parcel Service, Inc.,

which is a publicly-held corporation."  Docket ## 3-4, 18CV1706 (duplicate copies of

Defendants' Corporate Disclosure Statement).

"As a general matter, the law allows a corporation to organize so as to isolate liabilities

among separate entities, and therefore only treats the employees of a corporate entity as the

employees of a related entity under extraordinary circumstances." Han v. Kuni's Corp., No. 19-

CV-6265 (RA), 2020 WL 2614726, at *7 (S.D.N.Y. May 22, 2020) (internal quotation marks,

brackets, and citation omitted).  "In the employment discrimination context, however, there is a

strong presumption that a parent is not the employer of its subsidiary's employees." Id. (internal

quotation marks, brackets, and citation omitted).  "Accordingly, to prevail in an employment

action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish

that the defendant is part of an integrated enterprise with the employer, thus making one liable

for the illegal acts of the other." Id. (internal quotation marks, brackets, and citations omitted).

"A single employer situation exists where two nominally separate entities are actually part of a

single integrated enterprise," id. (internal quotation marks and citation omitted), and "a parent

company is considered an employer of its subsidiary's employees only when the parent and

subsidiary represent a single, integrated enterprise." Id. (internal quotation marks and citation

omitted).

"Under the single employer doctrine, Plaintiff must assert factual allegations supporting

four factors to hold multiple entities jointly liable for unlawful employment-related conduct:  '(1)

interrelation of operations, (2) centralized control of labor relations, (3) common management,

and (4) common ownership or financial control.' " White v. Best Cheese Corp., Case No. 17 CV

4487 (NSR), 2018 WL 4684163, at *4 (S.D.N.Y. Sept. 27, 2018) (quoting Murray v. Miner, 74

F.3d 402, 404 (2d Cir. 1996)).  "Though no factor is determinative, the second, 'centralized control of labor relations', is the most significant."  Id. (citation omitted).  "The Second Circuit has also recognized that the third and fourth factors—common management and common ownership—are, in particular, ordinary aspects of the parent-subsidiary relationship, which often may be of limited use in determining whether to treat two or more corporate affiliates as a single employer."  Han, 2020 WL 2614726, at *8 (internal quotation marks, brackets, and citation omitted).  "The critical question is what entity made the final decisions regarding employment matters related to the plaintiff?  In addition, the Court must focus its inquiry on the parent's actual involvement in the particular circumstances giving rise to the litigation . . . ."  White, 2018 WL 4684163, at *4 (internal quotation marks and citations omitted).  "The Second Circuit has stated that ordinarily, whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss."  Id. (internal quotation marks, brackets, and citation omitted).  In the context of a motion to dismiss, a plaintiff "need only allege facts sufficient to put the defendant on notice of the theory of employer liability upon which [his or] her claims are based."  Id. (internal quotation marks, brackets, and citations omitted); see also Han, 2020 WL 2614726, at *8 ("And although the determination of whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact, where a plaintiff's allegations are so inadequate that they fail to put a defendant on notice of the theory of employer liability, dismissal is appropriate.") (internal quotation marks, alterations, and citation omitted).

       Although in opposition to the motions to dismiss Plaintiff cites to several documents that he contends establish that UPSA and UPSF constitute a single employer, Mem. in Opp'n at 11; Ranni Decl. Exs. 2-9, in the context of a motion to dismiss, where the Court is confined to

examination of the pleadings, there are no allegations in any of the complaints filed in <u>Foster II</u>,

<u>Foster III</u>, or <u>Foster IV</u> that would have put UPSA on notice that Plaintiff's claims are based on a

single employer theory.[11]  The factual allegations in all four actions are in all material respects

virtually identical, whether the action is brought against UPSF, as in the first amended complaint

in <u>Foster I</u>, or against UPSA, as in <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u>.  The fact that UPSF is a

wholly owned subsidiary of UPSA (which is not alleged in any of the complaints) does not, in

and of itself, make UPSA liable for the conduct of UPSF.  See <u>Pineda v. ESPN, Inc.</u>, 3:18-cv-

00325-MPS, 2019 WL 6255199, at *4 (D. Conn. Nov. 22, 2019) ("Nor does TWDC's ownership

---

[11] In deciding a motion to dismiss under Rule 12(b)(6), the court may also consider any written
instrument attached to the complaint, statements or documents incorporated into the complaint
by reference, matters of which judicial notice may be taken, and documents possessed by, or
known to, the plaintiff, and upon which the plaintiff relied in bringing suit.  <u>ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  However,

> [w]hen matters outside the pleadings are presented in response to a
> 12(b)(6) motion, a district court must either exclude the additional
> material and decide the motion on the complaint alone or convert the
> motion to one for summary judgment under Fed. R. Civ. P. 56 and afford
> all parties the opportunity to present supporting material. . . . Thus, a
> district court errs when it consider[s] affidavits and exhibits submitted by
> defendants, or relies on factual allegations contained in legal briefs or
> memoranda, in ruling on a 12(b)(6) motion to dismiss.

<u>Friedl v. City of New York</u>, 210 F.3d 79, 83–84 (2d Cir. 2000) (internal quotation marks and
citations omitted); <u>see also</u> <u>Mayo v. Fed. Gov't</u>, 558 F. App'x 55, 56 (2d Cir. 2014) ("A court
normally may not look beyond the four corners of the complaint in considering a motion to
dismiss.") (citing <u>Friedl</u>, 210 F.3d at 83).  The voluminous exhibits submitted by Plaintiff as part
of his opposition papers, and upon which he relies to establish that UPSA and UPSF are a single
employer, are neither attached to nor incorporated by reference into any of Plaintiff's complaints,
nor were they relied upon in bringing suit.  As Plaintiff's memorandum of law in opposition
states, "It became clear **in discovery** that UPS Ground Freight Inc. is a nominal employer while
UPS[A] is the single employer."  Mem. in Opp'n at 9 (emphasis added).  Accordingly, the Court
declines to consider the exhibits attached to Plaintiff's opposition papers to determine whether
they demonstrate that UPSA and UPSF constitute a single employer, especially where, as here,
there are no allegations in any of the complaints even suggesting a single employer theory.

of ESPN make it liable for ESPN's alleged discriminatory acts.") (citing, inter alia, United States v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries.")); see also Han, 2020 WL 2614726, at *12 ("Nonetheless, the existence of a parent-subsidiary relationship is insufficient on its own to support a finding that the two entities are a single or joint employer for purposes of Title VII.") (internal quotation marks and citation omitted).

In the complaints filed in Foster II, Foster III, and Foster IV, which name only UPSA as a defendant, Plaintiff alleges that "Plaintiff suffered discrimination as result of the conduct of the Defendant, its agents, servants or employees," Docket # 1, 18CV10294 ("Foster II Compl.") ¶ 20; see also Foster III Compl. ¶ 23 ("Plaintiff suffered discrimination as a result of the conduct of the Defendant, its agents, servants or employees . . ..."); Foster IV Compl. ¶ 28 ("Plaintiff suffered discrimination as a result of the conduct of the Defendant, its agents, servants or employees . . .."), but he nowhere alleges that any employees of UPSF, which is not even mentioned in those complaints despite being Plaintiff's "nominal employer," were acting as agents of UPSA. See Pineda, 2019 WL 6255199, at *4 ("Plaintiff has made no allegations to suggest that the actions of ESPN employees described in the complaint are attributable to TWDC under principles of agency law."). There are no other allegations in any of the complaints that in any way satisfy the four-factor test or even suggest that UPSA and UPSF are a single employer.

Plaintiff has taken inconsistent positions regarding the proper defendant over the course of litigating these four related actions. As Defendant UPSA pointed out in its motion to dismiss filed in Foster IV, Plaintiff filed a letter in response to Defendant's pre-motion letter to dismiss Foster II and Foster III in which Plaintiff states that "the two cases were inadvertently filed

against United Parcel Service of America, Inc. ('UPSA') while they should have been filed against UPS Ground Freight, Inc. ('UPSF') as per a Stipulation in <u>Foster I</u>."  Docket # 13, 18CV10294, at 1; <u>see</u> Docket # 24, 19CV6501, at 13 n.3.  But then in the very next sentence of his letter Plaintiff states, "Notwithstanding, Plaintiff was an employee of UPSA who hired him and qualified him."  Docket # 13, 18CV10294, at 1.  He then adds, "Plaintiff asserts that UPSA is a correct Defendant in both actions and is as [sic] an employer pursuant to relevant statute." <u>Id.</u>  Lastly, and most importantly in the context of the instant motions, the letter states that "as with <u>Foster I</u>, Plaintiff would agree to amend the caption and correct the party designation or seek to amend <u>Foster II</u> and <u>III</u>."  <u>Id.</u>  Plaintiff now states in opposition to the instant motions to dismiss that he "regrets letting UPS[A] out of Foster I as UPS[A] is clearly Plaintiff's single employer. . . . If the Defendants want to get technical, and review each case as though they stand alone, the stipulation in Foster I is limited by its terms to that case.  It would not preclude Plaintiff in II, III and IV from pursing [sic] UPS[A] as Plaintiff's single employer."  Mem. in Opp'n at 4.  Indeed, the stipulation entered in <u>Foster I</u> states, "**For purposes of this civil action**, Defendant UPS Ground Freight, Inc., referred to as UPS Freight, Inc. by Plaintiff, stipulates that it was Plaintiff's employer."  Docket # 14, 18CV1706 (emphasis added).  Defendant UPSA provides no legal support for its assertion that this stipulation is binding on Plaintiff in <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u>, and it nowhere addresses Plaintiff's argument that UPSA and UPSF constitute a single employer.

Nonetheless, Plaintiff cannot have it both ways.  Either UPSF is his employer, and he should have named UPSF as a defendant in <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u>, or UPSF and UPSA constitute a single employer, in which case the absence of allegations in any of the complaints filed in <u>Foster II</u>, <u>Foster III</u>, or <u>Foster IV</u> that either put UPSA on notice that

Plaintiff's claims are based on a single employer theory or even support that theory of liability renders his claims subject to dismissal for failure to state a claim.  See Pineda, 2019 WL 6255199, at *4 n.4 ("Here, Plaintiff pleads no facts suggesting interrelation of operations, centralized control of labor operations, common management, or common ownership or financial control between ESPN and TWDC—factors that courts consider to determine whether two companies should be treated as a single employer.").  Moreover, Plaintiff's failure to plead UPSA's liability on a single employer theory is particularly problematic with respect to his complaints in Foster II and Foster IV.  Plaintiff made a knowing choice to bring Foster II and Foster IV against UPSA alone, and with respect to his ADA claims, which are asserted only in those actions, he is barred by the statute of limitations from changing his mind and now bringing those actions against UPSF.

As Defendant UPSA notes in its motions to dismiss in Foster II and Foster IV, the statute of limitations for filing ADA claims after receipt of a notice of right to sue is 90 days.  Docket # 26, 18CV10294, at 12; Docket # 24, 19CV6501, at 12; see Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2011) ("In order to be timely, a claim under the ADA must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." (citing 42 U.S.C. § 2000e–5(f)(1) (specifying that a Title VII action must be brought within 90 days of the claimant's notification of her right to sue); id. § 12117(a) (applying the Title VII limitations period to claims brought under the ADA))).  Plaintiff's notice of right to sue in Foster II was issued on August 27, 2018, Ranni Decl. Ex. 10, and accordingly, Plaintiff had until November 28, 2018, to file his complaint in that action.  See Tiberio, 664 F.3d at 37 ("There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice.  There is a further presumption that a mailed

document is received three days after its mailing.") (citations omitted).  Plaintiff's notice of right to sue in <u>Foster IV</u> was issued on April 15, 2019, Ranni Decl. Ex. 11, and accordingly, he had until July 17, 2019, to file his complaint in that action.  The complaints in <u>Foster II</u> and <u>Foster IV</u> were timely filed, but they were only filed against UPSA.  Consequently, Plaintiff cannot amend those complaints to add UPSF as a defendant unless the amendment "relates back" to the original complaints under Fed. R. Civ. P. 15(c)(1)(C) ("An amendment to a pleading relates back to the date of the original pleading when: . . . the amendment changes the party or the naming of the party against whom a claim is asserted, if . . . the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity").  However, relation back under Rule 15(c)(1)(C) does not apply where, as here, a plaintiff did not make "a mistake concerning the proper party's identity." In opposition to the motions to dismiss, Plaintiff states that he "made an error in not adding Ground Freight Inc. to Foster II, Foster III and Foster IV to avoid the current motions.  However, **that does not mean Plaintiff sued the wrong party**."  Mem. in Opp'n at 7 (emphasis added).

As one district court explained,

> [Rule 15(c)(1)(C)] "asks what the prospective <u>defendant</u> knew or should have known during the Rule 4(m) period, not what the <u>plaintiff</u> knew or should have known at the time of filing [his or] her original complaint." <u>Krupski v. Costa Crociere S.p.A.</u>, 560 U.S. 538, 548 (2010) (emphasis in original).  The information a plaintiff had in his or her possession is relevant only when it bears on the <u>defendant's</u> awareness of whether the plaintiff made a mistake regarding the proper party's identity; the plaintiff's knowledge of a party's existence does not rule out a mistake if the plaintiff sued a different party based on a misunderstanding of the respective parties' roles. <u>Id.</u> at 549 [emphasis added].  But, "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint or the amended complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." <u>Id.</u> at 552.

Fischer v. Forrest, 14 Civ. 1304 (PAE)(AJP), 14 Civ. 1307 (PAE)(AJP), 2017 WL 1063464, at

*2 (S.D.N.Y. Mar. 21, 2017).  Plaintiff knew when he brought Foster II and Foster IV that he

viewed both UPSA and UPSF as proper defendants.  He states that he stipulated that UPSF was

Plaintiff's employer (and dismissed UPSA from the action) for purposes of Foster I "as a matter

of convenience **to avoid a motion**," Mem. in Opp'n at 9 (emphasis added), implying that

Plaintiff knew at that point that UPSA disagreed with his theory of single employer liability, but

he did not want to litigate the issue, and therefore, he conceded that UPSF was the sole entity

that could be subject to employer liability on his claims in Foster I.

    Nonetheless, Plaintiff states that it "became clear in discovery[12] that UPS Ground

Freight, Inc. is a nominal employer while UPS is the single employer."  Id.  Thus, Plaintiff does

not claim that he made a mistake when he named only UPSA as a defendant in Foster II, Foster

III, and Foster IV.  Rather, his decision to file suit against UPSA alone was the product of a fully

informed decision.  Accordingly, Plaintiff cannot now amend the complaints filed in Foster II

and Foster IV to add UPSF as a defendant, as such amendment would be untimely and not relate

back to the original complaints filed in those actions.  See Fischer, 2017 WL 1063464, at *3

(dismissing claims against certain defendants as untimely and not relating back:  "Judge Peck

correctly determined that, when he originally brought these lawsuits, Fischer had not made a

mistake about the roles or potential liability of BMBF or Gebauer but instead had deliberately

chosen not to sue either of them."); see also Schiro v. Cemex, S.A.B. de C.V., 18-CV-2352

---

[12] Discovery only occurred in Foster I.  Therefore although, as noted above, such allegations are
lacking, Plaintiff presumably had the information that he contends supports his assertion of
single employer liability by the time he filed his complaints in Foster II, Foster III, and Foster
IV.

(VEC), 2020 WL 635705, at *5 (S.D.N.Y. Feb. 10, 2020) ("Here, the Court has no reason to believe that Plaintiffs made a mistake in failing to name CLH as a defendant in the initial complaint or in the FAC.  Plaintiffs were aware of CLH's existence and the relationship among Cemex, CLH, and Cemex Colombia . . . Because Plaintiffs' decision not to name CLH as a defendant in the initial complaint or FAC was not a mistake about Cemex or CLH's identities, but rather a deliberate decision, relation-back does not apply.").

In sum, unless Plaintiff is able to re-plead to allege UPSA's liability on a single employer theory, Foster II and Foster IV should be dismissed.  See White, 2018 WL 4684163, at *6 (In deciding a motion to dismiss and finding that the plaintiff had failed to allege single employer liability as to one of the defendants, the district court stated, "[A]s Plaintiff's claims fail for insufficiency of her pleadings, and not as a matter of law, she will be afforded an opportunity to re-plead.").  Having stipulated to the dismissal of UPSA from Foster I, and because Plaintiff cannot seek leave to amend his ADA claims in Foster II and Foster IV to assert them against UPSF since they are untimely and do not relate back to the original complaints filed therein, Plaintiff is now compelled to proceed in this manner.  Despite his wishes to the contrary, Plaintiff's proposed fourth amended complaint in Foster I will not serve to bring all of his claims together in one action unless he is willing abandon his ADA claims.

In contrast, a three-year statute of limitations applies to Plaintiff's state law discrimination and retaliation claims in Foster III.  See Obi v. Westchester Med. Regional Physician Servs., P.C., 19CV3022 (VB), 2020 WL 1434159, at *10 (S.D.N.Y. Mar. 23, 2020) ("The limitations period for filing a NYSHRL claim is three years.") (citing Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012)).  Accordingly, Plaintiff can still assert the NYHRL claims in Foster III

against UPSF by way of his proposed fourth amended complaint in <u>Foster I</u>, and the Court will

allow him to do so as explained below with respect to the motion for leave to amend.[13]

### 3.     Federal Law Preemption

Defendant UPSA argues that <u>Foster III</u> should be dismissed for the additional reason that

the state law claims asserted therein are preempted by the Labor Management Relations Act

("LMRA").  Docket # 25, 18CV10925 ("<u>Foster III</u> Mem. in Supp.") at 11-14.  "Section 301 of

the LMRA confers jurisdiction upon federal courts to hear claims based on rights created by

collective-bargaining agreements 'and also claims substantially dependent on analysis of a

collective-bargaining agreement.' "  <u>Prudenti v. Daily News, L.P.</u>, No. 10 Civ. 8964 (RJS), 2011

WL 2899226, at *2 (S.D.N.Y. July 11, 2011) (quoting <u>Lingle v. Norge Div. of Magic Chef Inc.</u>,

486 U.S. 399, 410 n. 10 (1988) (internal quotation marks omitted)) (footnote omitted).[14]  "As the

Supreme Court has explained, a state-law claim is preempted by § 301 where resolution of the

claim requires interpretation of the terms of the collective-bargaining agreement governing

Plaintiffs employment."  <u>Id.</u> (citing <u>Lingle</u>, 486 U.S. at 407).  "However, '§ 301 cannot be read

---

[13] A three-year statute of limitations also applies to the negligent infliction of emotional distress
claim that Plaintiff raises in <u>Foster III</u>, <u>see</u> <u>Fahlund v. Nassau Cty.</u>, 265 F. Supp. 3d 247, 259
(E.D.N.Y. 2017), but since Plaintiff has elected to drop that claim from the proposed fourth
amended complaint in <u>Foster I</u> which Plaintiff seeks to file in response to the motions to dismiss,
the Court considers Plaintiff to have abandoned it.

[14] Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce as defined in this
> chapter, or between any such labor organizations, may be brought in any district
> court of the United States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.'" Id. (quoting Livadas v. Bradshaw, 512 U.S. 107, 123 (1994)).  "Furthermore, a state claim involving a provision of a collective-bargaining agreement is preempted only if the provision is in genuine dispute." Id. (citations omitted).  "[A] claim is not preempted by 'the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation.'" Medina v. Waste Connections of New York, Inc., No. 19-CV-291 (RA), 2019 WL 5593307, at *2 (S.D.N.Y. Oct. 29, 2019) (quoting Livadas, 512 U.S. at 124).

        In Foster III Plaintiff asserts claims of both disability discrimination and retaliation in violation of the NYHRL.[15]  "District courts within the Second Circuit have repeatedly come to the conclusion that NYHRL claims are not preempted by § 301 of the LMRA." Wilds v. United Parcel Service, Inc., 262 F. Supp. 2d 163, 182 (S.D.N.Y. 2003) (collecting cases).  "Those courts arrived at that conclusion because they found that an inquiry into whether the elements of an NYHRL discrimination claim or the defenses thereto had been satisfied would not require any interpretation of a contractual term in a collective-bargaining agreement." Id.  Here, Plaintiff alleges that Defendant UPSA discriminated against him on the basis of his disability by refusing to accommodate that disability.  Foster III Compl. ¶ 25.  The elements of a prima facie case of disability discrimination under the NYHRL are "(1) [the plaintiff] is an individual with a disability within the meaning of the statute; (2) the defendant is subject to the statute and had notice of the disability; (3) the plaintiff was otherwise qualified to perform the essential functions of his [or her] position; and (4) he [or she] was fired because of his [or her] disability." Prudenti,

_____

[15] Because, as explained in footnote 13, supra, the Court deems Plaintiff's negligent infliction of emotional distress claim to have been abandoned, the Court does not address the issue of whether that claim is subject to federal law preemption.

2011 WL 2899226, at *2.  "As is evident from the elements of the cause[] of action that Plaintiff

asserts, employment discrimination claims brought under [the NYHRL] and [New York City]

human rights laws involve precisely the type of nonnegotiable rights conferred on individual

employees as a matter of state law that are not preempted by § 301 of the LMRA."  Id., at *3

(internal quotation marks and citations omitted).

   Defendant UPSA claims that Plaintiff raises issues concerning interpretation of the

collective bargaining agreement ("CBA"), citing four paragraphs in the complaint, Foster III

Compl. ¶¶ 17, 18, 19, 21.  In paragraph 17, Plaintiff does not cite the CBA, but alleges that he

"lost significant job security" when UPSA refused to return him to his position as a "City" driver,

"claiming his disability could not be accommodated," and instead only offered him the position

of "Road" driver "with a loss of seniority and consequently a reduction of hours, overtime and

benefits."  Foster III Compl. ¶ 17.  UPSA claims that loss of seniority is "a right only based in

the CBA."  Foster III Mem. in Supp. at 13.  In paragraph 18, Plaintiff makes allegations

concerning his refusal to sign a document that would have "waived his protected rights under

federal and state law in exchange for reinstatement to the new position of 'Road Driver' . . .,"

Foster III Compl. ¶ 18, which UPSA claims "was actually an Accommodation Agreement

through which the union and UPS Freight agreed to waive certain CBA requirements, including

the job bidding process, in order to place Plaintiff in his new position."  Foster III Mem. in Supp.

at 13.  In paragraph 19, Plaintiff alleges that he was terminated for failing to report a de mininis

accident, while other similarly situated employees "suffered only a minimal suspension" for

similar accidents, Foster III Compl. ¶ 19, and UPSA claims that this "requires interpretation of

the CBA's 'just cause' provision."  Foster III Mem. in Supp. at 13.  Only paragraph 21 cites the

CBA itself, alleging that "[i]n the Grievance Arbitration, Defendant sought to admit purported

'evidence' of Plaintiff's prior disciplinary history beyond that permitted by the Collective

Bargaining Agreement," and alleging that "such history is not typically utilized by Defendant in

disciplinary actions involving other UPS employees which were the same or similar to Plaintiff."

Foster III Compl. ¶ 21.  Plaintiff claims that this "constituted an additional unlawful disparity."

Id.  UPSA contends that the Court "cannot analyze this claim without interpreting the grievance

and arbitration procedures contained in the CBA."  Foster III Mem. in Supp. at 13-14.

Despite UPSA's contentions, the Court does not agree that resolution of Plaintiff's

discrimination claim will depend on an interpretation of the CBA, and "even if dispute resolution

pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other,

would require addressing precisely the same set of facts, as long as the state-law claim can be

resolved without interpreting the agreement itself, the claim is independent of the agreement for

§ 301 pre-emption purposes."  Prudenti, 2011 WL 2899226, at *4 (internal quotation marks and

citation omitted).  In this case, as with the claims in Prudenti, "resolution of Plaintiff's claims will

center on the conduct and motivations of Defendant in firing Plaintiff, an analysis that will not

necessarily place the terms of the CBA into dispute.  To the contrary, the dispute at the heart of

this litigation is whether Defendant treated Plaintiff differently than similarly situated . . . non-

disabled . . . employees."  Id.  Moreover, "courts in this Circuit have found that a defense

invoking the 'just cause' provision of a collective-bargaining agreement does not give rise to

preemption under the LMRA."  Id., at *5; see also Wilds, 262 F. Supp. 2d at 181 ("[T]he

Defendants will not need to demonstrate that UPS terminated Rasheed Wilds pursuant to a

permissible cause specifically enumerated in Article 13 of the CBA.  To the contrary, if Wilds

establishes a prima facie case of discrimination or retaliation, the Defendants would be able to

rebut the presumption of discrimination that would arise therefrom by articulating nothing more than a legitimate, non-discriminatory reason for the employment decision.").

Plaintiff also claims that Defendant UPSA retaliated against him in that he was mistreated and denied "equal opportunity, terms, conditions, and perquisites of employment" in retaliation for "having engaged in protected conduct." Foster III Compl. ¶ 30.  Plaintiff alleges (and it is undisputed) that he engaged in protected activity, both in filing a charge of discrimination with the EEOC and initiating a lawsuit against UPSA in state court (Foster I), which was removed to federal court. Id. ¶¶ 15-16.  Therefore the issue with respect to Plaintiff's retaliation claim is whether Defendant UPSA took adverse action against Plaintiff in response to his protected activity—an issue that has nothing to do with the collective bargaining agreement between Plaintiff's union and UPSF. See Medina, 2019 WL 5593307, at *2 ("Accepting that Plaintiff engaged in protected activity by reporting race and national origin discrimination to his supervisors and Human Resources, the questions at issue in the case are whether the subsequent conduct by Defendant was adverse and causally connected to Plaintiff's complaints.").

Based on all of the foregoing, I conclude and respectfully recommend that Your Honor should conclude, that Defendant UPSA's motions to dismiss should be **granted in part and denied in part** as set forth above.  Foster II and Foster IV should be dismissed without prejudice to Plaintiff being given an opportunity to re-plead his theory of single employer liability against UPSA.  If Plaintiff thereafter succeeds in alleging UPSA's liability under the single employer theory, then Foster II should be allowed to proceed in its entirety, but Foster IV should only be allowed to proceed on the non-duplicative claims relating to the events of July, 2018.  If Plaintiff fails to re-plead successfully UPSA's liability under the single employer theory, then both Foster II and Foster IV should be dismissed with prejudice.  With respect to Foster III, as explained

below, Plaintiff need not seek leave to re-plead his theory of single employer liability against UPSA, since the Court **grants in part** Plaintiff's motion for leave to file a fourth amended complaint in <u>Foster I</u>, and the fourth amended complaint would both subsume Plaintiff's non-duplicative claims from <u>Foster III</u> and allow Plaintiff to assert them against UPSF.  Accordingly, I additionally conclude, and respectfully recommend that Your Honor should conclude, that <u>Foster III</u> should be dismissed.

### B.    **The Fourth Amended Complaint**

As is evident from the preceding sections, Plaintiff's decision to file multiple lawsuits has created a piecemeal approach to his claims that cannot now be easily rectified.  Nonetheless, as stated in his original motion for leave to file a third amended complaint in <u>Foster I</u> (now a fourth amended complaint), Plaintiff seeks leave to do so as a means of doing just that, claiming that the proposed amendment "will facilitate all claims in one action."  Mot. to Amend at 2.  The proposed fourth amended complaint asserts twenty claims, which are actually the same four claims asserted as to five separate groupings of facts, based on all of the same factual allegations as <u>Foster I</u>, <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u>, as well as 15 additional paragraphs of allegations concerning events in December, 2019, January, 2020, and April, 2020:  (1) disability discrimination in violation of the ADA, (2) retaliation in violation of the ADA, (3) disability discrimination in violation of the NYHRL, and (4) retaliation in violation of the NYHRL.  The proposed fourth amended complaint names only UPSF as a defendant.

As has already been explained, however, despite Plaintiff's wish to do so, not all claims can be brought in one action at this stage of the litigation.  Rather, his administratively exhausted ADA claims can only be pursued through <u>Foster II</u> and <u>Foster IV</u>, and therefore, Plaintiff's first amended complaint in <u>Foster I</u> (the current operative pleading) can be amended to include solely

his NYHRL claims spanning the entire history of events up through April, 2020, which are neither preempted by federal law for the reasons stated in Section II.A.3, supra, nor subject to an administrative exhaustion requirement, see, e.g., Bresloff-Hernandez v. Horn, No. 05 Civ. 0384 (JGK), 2007 WL 2789500, at *8 n.5 (S.D.N.Y. Sept. 25, 2007) ("Unlike the ADA, the NYHRL and [New York City Human Rights Law] do not require exhaustion of administrative remedies.").  The fourth amended complaint will therefore include the NYHRL claims from Foster III that are not dismissible as duplicative, although they would now be asserted against UPSF, not UPSA.  On this basis, the Court recommends, as stated above, that Foster III should be dismissed.

Moreover, because Plaintiff cannot amend his complaint in Foster I to include any of his ADA claims from Foster II and Foster IV, the only proposed ADA claims that Plaintiff can possibly include in the fourth amended complaint are those based on the events of December, 2019, January, 2020, and April, 2020, and which are asserted only against UPSF.  As mentioned at the outset, Defendant UPSF opposes adding ADA claims "based on recent facts arising out of the December 2019 arbitration decision to return Plaintiff to a road-driver position" on the ground that Plaintiff has failed to exhaust his administrative remedies before the EEOC.  Amend Opp'n at 2.  Plaintiff does not claim to have exhausted these claims before the EEOC, and thus, the fourth amended complaint cannot include them.  See Sternkopf v. White Plains Hosp., No. 14–CV–4076 (CS), 2015 WL 5692183, at *7 (S.D.N.Y. Sept. 25, 2015) ("Prior to filing an ADA claim in federal court, a plaintiff must exhaust administrative remedies with the EEOC or an authorized agency.") (citation omitted).  Nevertheless, because it is inevitable that at some later point in time, upon exhausting the claims and receiving a notice of right to sue from the EEOC, Plaintiff will (since he can no longer amend any of his complaints as of right) commence yet a

fifth action asserting these new federal claims, the Court recommends that the remaining three cases (assuming <u>Foster II</u> and <u>Foster IV</u> are successfully re-pleaded and <u>Foster III</u> is dismissed) should be consolidated and discovery stayed pending Plaintiff's exhaustion of administrative remedies before the EEOC with respect to his proposed new ADA claims concerning the events of December, 2019, January, 2020, and April, 2020.  Given that all of the cases relate to the same employment relationship and thus have substantially overlapping facts, consolidation would advance the interest of judicial economy.

### C.   <u>Motions for Sanctions</u>

Defendant UPSA has moved for sanctions in the form of the attorneys' fees and costs "it has been unnecessarily forced to incur due to Plaintiff's counsel's bad faith litigation tactics" in <u>Foster II</u>, <u>Foster III</u>, and <u>Foster IV</u>.  Docket # 30, 18CV10294 ("Sanctions Mem.") at 1.[16]  The motion seeks sanctions under both 28 U.S.C. § 1927 and the Court's inherent power.  <u>Id.</u>

"In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, <u>i.e.</u>, motivated by improper purposes such as harassment or delay."  <u>Enmon v. Prospect Capital Corp.</u>, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks and citation omitted). "Although both findings must be supported by a high degree of specificity in the factual findings, bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  <u>Id.</u> (internal quotation marks and citations omitted).  With respect to the imposition of sanctions under 28 U.S.C. § 1927, the requisite showing of bad faith is "similar to that necessary to invoke

---

[16] The same brief in support of sanctions was filed in <u>Foster III</u>, Docket # 29, 18CV10925, and <u>Foster IV</u>, Docket # 27, 19CV6501.

the court's inherent power." Id. (internal quotation marks and citation omitted).  "In practice, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Id. at 144 (internal quotation marks and citation omitted).

Here, although Plaintiff's counsel's chosen course of action—the filing of four separate lawsuits—might not have been the best choice, the Court's finding that these lawsuits are not entirely duplicative of Foster I leads to the conclusion that sanctions are not warranted. Furthermore, there is no basis for the Court to conclude that Plaintiff's counsel's actions were so completely without merit that they were undertaken for an improper purpose.  Accordingly, while the Court has a dim view of the procedure followed by Plaintiff's counsel in this matter, the Court nevertheless denies Defendant UPSA's motion for sanctions.

Meanwhile, in Foster I, although Defendant UPSF sought an award of fees and costs for having to respond to Plaintiff's renewed motion for leave to file a third amended complaint, see Docket # 64, 18CV1706 at 1 ("Incredibly, Plaintiff now seeks to circumvent Judge Román's denial of his request for leave to amend by seeking a different ruling from this Court.  By way of this letter, Defendant seeks fees and costs for having to respond to this motion a second time."), it does not renew its request for such an award in its opposition to the motion for leave to file a fourth amended complaint.  See generally Amend Opp'n.  In any event, even if the Court were to consider such an application, the minute entry for the conference held before Judge Román on January 24, 2020, states, "The Court denies without prejudice Plaintiffs request for leave to file an amended complaint in Foster v UPS, 18cv1706.  However, **Plaintiff may seek leave to**

**amend from Judge Smith**."   <u>Foster I</u> Docket Sheet, Minute Entry for 01/24/2020 (emphasis

added).  The Court therefore denies Defendant UPSF's application for fees and costs.

## **CONCLUSION**

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant UPSA's motions to dismiss (Docket # 25, 18CV10294; Docket # 24, 18CV10925; Docket # 23, 19CV6501) should be **granted in part and denied in part**. The motion to dismiss Foster II as duplicative should be denied in its entirety, and the motions to dismiss Foster III and Foster IV as duplicative should be denied with respect to any claims arising from factual allegations related to Plaintiff's pretextual termination in July, 2018. The motions to dismiss Foster II and Foster IV for naming the wrong defendant should be granted but without prejudice to Plaintiff being afforded an opportunity to re-plead UPSA's single employer liability in Foster II and Foster IV, and if Plaintiff fails to do so successfully, then I conclude, and respectfully recommend that Your Honor should conclude, that Foster II and Foster IV should be dismissed with prejudice. The motion to dismiss Foster III both for naming the wrong defendant and as preempted by the LMRA should be denied, but because the non-duplicative claims in Foster III are subsumed within Plaintiff's proposed fourth amended complaint in Foster I, and UPSF is the named defendant in Foster I, I conclude, and respectfully recommend that Your Honor should conclude, that Foster III should be dismissed. Additionally, I conclude, and respectfully recommend that Your Honor should conclude, that the remaining three cases— Foster I, Foster II, and Foster IV (assuming Foster II and Foster IV are successfully re-pleaded and Foster III is dismissed)—should be consolidated and discovery should be stayed pending Plaintiff's exhaustion of administrative remedies before the EEOC with respect to his proposed new ADA claims against UPSF concerning the events of December, 2019, January, 2020, and April, 2020.

With respect to Plaintiff's motion for leave to file a fourth amended complaint in <u>Foster I</u> (Docket # 63, 18CV1706), the motion is **granted in part and denied in part**.  The complaint in <u>Foster I</u> shall be amended to include Plaintiff's NYHRL claims of disability discrimination and retaliation based on all of his factual allegations up through the events of April, 2020, including his non-duplicative NYHRL claims from <u>Foster III</u>, <u>i.e.</u>, the claims based on events that occurred in July, 2018.  However, the complaint shall not be amended to include any ADA claims, as the only potentially viable ADA claims that may be brought in <u>Foster I</u> have not yet been administratively exhausted.

Lastly, both Defendant UPSA's motion for sanctions (Docket # 30, 18CV10294; Docket # 28, 18CV10925; Docket # 26, 19CV6501) and Defendant UPSF's motion for sanctions are **denied**.

With regard to the Report and Recommendation on the motions to dismiss, the following Notice provision applies:

<u>**NOTICE**</u>

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, <u>see</u> Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of Court with extra copies delivered to the chambers of The Honorable Nelson S. Román at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Román.

Dated: September 4, 2020
       White Plains, New York

                                     **So Ordered and Respectfully Submitted,**

                                     _____

                                     Lisa Margaret Smith
                                     United States Magistrate Judge
                                     Southern District of New York