UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATT FOSTER, | |
| Plaintiff, | |
| -against- | 18-cv-1706 (NSR) |
| UNITED PARCEL SERVICE OF AMERICA, INC., UPS FREIGHT, INC, and TFORCE FREIGHT, INC., | OPINION & ORDER |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/24/2025

NELSON S. ROMÁN, United States District Judge:

Plaintiff Matt Foster ("Plaintiff") initiated this action on February 23, 2018, bringing forth claims for violations of the New York State Human Rights Law ("NYSHRL") and Title II of the Americans with Disabilities Act ("ADA"), against Defendants United Parcel Service of America, Inc. ("UPSA") and against UPS Freight, Inc. ("UPS Freight"), which became TForce Freight, Inc. ("TForce Freight")[1] (collectively, the "Defendants").

Presently before the Court is Defendants UPSA's Motion for Summary Judgment and TForce Freight's Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56. For the following reasons, Defendant UPSA's Motion for Summary Judgment is GRANTED and Defendant UPS Freight's Motion for Summary Judgment is GRANTED.

BACKGROUND

Defendants and Plaintiff submitted briefs, Defendants submitted a statement of material fact pursuant to Local Rule 56.1, to which Plaintiff submitted a response with a supplemental

---

[1] "TForce Freight" is referred to as "UPS Freight" for the purposes of this Opinion and Order.

statement of material fact, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background. The facts are undisputed unless otherwise stated.

Plaintiff was employed by UPS Freight. (Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Defs.' 56.1") ¶ 7, ECF No. 194.) UPS Freight was a subsidiary of UPSA until 2021, when TFI International, Inc., acquired UPS Freight from UPSA, with UPS Freight becoming TForce Freight. (*Id.* ¶ 2.) Plaintiff suffered a traumatic brain injury at the age of 15 when he fell off a cliff. (*Id.* ¶ 6.) Plaintiff was hired as a City Driver by UPS Freight. (*Id.* ¶ 7.) Upon being hired, Plaintiff attended a UPS Freight orientation, wherein he received UPS Freight's employee handbook. (*Id.* ¶ 10.) Plaintiff worked under a collective bargaining agreement between UPS Freight and the Teamsters. (*Id.* ¶ 9.) UPS Freight was responsible for disciplining Plaintiff for any violations of UPS Freight's policies and rules and responsible for making all decisions relating to employment. (*Id.* ¶¶ 33, 59.)

In April 2017, Plaintiff, without being asked, submitted medical records detailing that Plaintiff suffered from forgetfulness, was experiencing a drop in his verbal intellectual scale, was developing new stuttering issues, and that testing was needed to rule out epileptic activity. (*Id.* ¶ 15.) After receiving such information, and out of concern for Plaintiff's safety, UPS Freight removed Plaintiff from his position as City Driver. (*Id.* ¶ 17.) Plaintiff returned to work on or around July 3, 2017, after he provided UPS Freight a copy of a letter from his medical provider, eRiver Neurology, clearing Plaintiff for full employment status without restrictions. (*Id.* ¶ 18.)

After Plaintiff returned to work, Plaintiff applied for reasonable accommodations. (*Id.* ¶ 19.) Plaintiff had a meeting with UPS Freight supervisors on August 2, 2017, to discuss potential accommodations. (*Id.*) At the meeting, the parties completed an accommodation checklist, which stated that Plaintiff had difficulty remembering, that he would benefit from being assigned

repetitive tasks, that he needed additional time to complete tasks and needed written instructions. (*Id*.) The accommodation checklist the parties completed indicated that Plaintiff could not identify any other jobs that he could perform beyond being a City Driver. (RCM Dec., Exs. 8 and 9.) UPS Freight advised Plaintiff that it would conduct a six-month job search to identify a position that would accommodate Plaintiff's disabilities. (Defs.' 56.1 ¶ 20.)

While conducting this search, UPS Freight removed Plaintiff from work on November 10, 2017, due to Plaintiff's failure to follow direct instructions from his direct manager, pending completion of the six-month job search for a position that could reasonably accommodate Plaintiff. (*Id*. ¶ 21.) Thereafter, in January 2018, UPS Freight reached out to Plaintiff to discuss Plaintiff returning to work as a Road Driver. (*Id*. ¶ 24.) Plaintiff preferred to work as a City Driver but accepted his transfer to work as a Road Driver. (*Id*. ¶¶ 24-27.) In the Road Driver position Plaintiff continued to enjoy the same benefits and was even compensated at a higher rate. (*Id*. ¶ 27.) Similarly, Plaintiff continued to receive the same degree of seniority for the purposes of wage rates, benefits, layoff, recall rights and vacation benefits. (*Id*.)

Plaintiff was again terminated in November 2021 after crashing into a barrier, failing to report the crash to management, driving at least 20 additional miles while having a severely damaged wheel, and then improperly reporting the crash to an hourly employee instead of his manager. (*Id*. ¶¶ 54-57, 59.) Plaintiff filed a grievance related to his termination, after which a grievance panel heard the case in December 2021 and mitigated the discipline to a time served suspension and ordered that Plaintiff return to work without backpay. (*Id*. ¶ 60.) UPS Freight again issued disciplinary notices against Plaintiff in December 2021 for not following his mandated route and in January 2022, after Plaintiff was inspected by the Connecticut Department of Motor Vehicles and found to have numerous infractions, including violations for driving with an expired

inspection sticker, failing to maintain blank logbooks required by Department of Transportation regulations and failure to certify his electronic logging device. (*Id*. ¶¶ 64-65.)

Based on the foregoing, Plaintiff brings claims alleging violations of the NYSHRL and the ADA against the Defendants.

## PROCEDURAL HISTORY

On February 23, 2018, Plaintiff commenced this action against the Defendants in his Complaint. (ECF No. 1.) Plaintiff subsequently filed a First Amended Complaint (ECF No. 25), and a Second Amended Complaint (ECF No. 113) ("SAC"), the latter being the operative complaint. On February 28, 2025, Defendant UPSA filed its motion for summary judgment and its memorandum of law in support (ECF No. 190) ("190 Mot."), and Defendant UPS Freight filed its motion for summary judgment and its memorandum of law in support. (ECF No. 192) ("192 Mot.") Plaintiff filed his opposition to the Defendants' motions for summary judgments (ECF Nos. 196 and 198) ("196 Opp." and "198 Opp."), and Defendants filed their respective replies in further support of their motions for summary judgment. (ECF Nos. 199 and 200) ("199 Reply" and "200 Reply").  The Defendants submitted a joint Rule 56.1 Statement (ECF No. 194) ("Defs.' 56.1"), and Plaintiff submitted a counter Rule 56.1 Statement. (ECF No. 197) ("Pltf.'s 56.1").

## LEGAL STANDARD

### A.  Rule 56

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") provides in relevant part, that a case is properly dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. When resolving a Rule 12(b)(1) motion for lack of lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). Plaintiff bears the burden

of demonstrating by a preponderance of the evidence that subject matter jurisdiction exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must

"draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Finally, where the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Barlow v. Connecticut*, 319 F. Supp. 2d 250, 259 (D. Conn. 2004), *aff'd sub nom. Barlow v. Dep't of Pub. Health, Connecticut*, 148 F. App'x 31 (2d Cir. 2005).

## DISCUSSION

Plaintiff brings forth claims for violations of the NYSHRL and the ADA. The Court addresses them in turn, grouping the claims by the respective Defendant for clarity's sake.

### A.  NYSHRL and ADA Claims Against UPSA (Count 5 through Count 16)

In order to prosecute an ADA claim against UPSA, the Plaintiff must first establish "[t]he existence of an employer-employee relationship" as this is a "primary element" of such claims. *Harris v. NYU Langone Med. Ctr.*, No. 12 CIV. 0454 (RA) (JLC), 2013 WL 3487032 (S.D.N.Y. July 9, 2013), *report and recommendation adopted as modified*, No. 12 CIV. 0454 (RA), 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013); *see also Gulino v. N.Y. State Educ. Dep't,* 460 F.3d 361, 370 (2d Cir. 2006). Likewise, "[a]n employer-employee relationship is also required to sustain analogous claims under the NYSHRL." *NYU Langone Med. Ctr.*, 2013 WL 3487032 at *11. Where

no employer-employee relationship exists, the court must dismiss the complaint. *McCray v. City Univ. of N.Y.,* 2011 WL 1197467, at *4–5 (S.D.N.Y. Mar. 25, 2011).

Presently, the Court must grant summary judgment in favor of UPSA as to Count 5 through Count 16, as there is no genuine dispute of material fact as to whether UPSA is an employer of Plaintiff, more specifically that UPSA does not have an employer-employee relationship with Plaintiff. UPSA's connection to the instant action stems from its relationship with UPS Freight; UPSA was the parent company of UPS Ground Freight ("UPS Freight") until 2021. (Defs.' 56.1 ¶ 1.) UPS Freight was a wholly owned subsidiary of UPSA until 2021. (*Id.* ¶ 2.)

To hold UPSA as the employer of UPS Freight's employees would require "extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). The relevant analysis to determine whether a parent company may be held liable as an employer pursuant to the single employment doctrine was articulated by the Second Circuit in *Cook v. Arrowsmith Shelburne, Inc.* Therein, the Second Circuit held the analysis consists of a four-factor inquiry, namely whether there was "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995). Notably, "[i]n the employment discrimination context . . . '[t]here is a strong presumption that a parent is not the employer of its subsidiary's employees.'" *Juhua Han v. Kuni's Corp.*, No. 19-CV-6265 (RA), 2020 WL 2614726, *7 (S.D.N.Y. May 22, 2020) (quoting *Fenner v. News Corp.*, No. 09 Civ. 09832 (LGS), 2013 WL 6244156, at *9 (S.D.N.Y. Dec. 2, 2013)). The most significant factor is the second factor: centralized control of labor relations. *Cook*, 69 F.3d 1235 at 1240. Courts have applied this four-prong analysis to ascertain whether a defendant is an employer for the purposes of a discrimination claim brought

under the NYSHRL and the ADA alike. *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 154 (2d Cir. 2014).

Per the *Cook* analysis, in light of the record established in the instant action, the Court cannot find that UPSA can be held liable pursuant to the single employer doctrine for the alleged conduct of UPS Freight employees. The weight of the *Cook* factors favors finding UPSA and UPS Freight to not be a single employer. USPA asserts that UPS Freight "directly employed its employees, including management and HR employees" and that "[e]mployees, including Plaintiff, received paychecks from UPS Freight." (Defs.' 56.1 ¶ 3.) Additionally, Plaintiff worked under a collective bargaining agreement between UPS Freight and the Teamsters. (*Id*. ¶ 9.) At hiring, Plaintiff received UPS Freight's employee handbook, and subsequently went through orientation with UPS Freight after he was hired. (*Id*. ¶ 10.) UPS Freight was responsible for disciplining the Plaintiff for violations of UPS Freight's policies and rules. (SAC ¶ 114.) Importantly, it was UPS Freight that made the decision to terminate Plaintiff from his position.  (Defs.' 56.1. ¶¶ 33, 59.)  In support of these factual averments, UPSA offers substantial evidence from the record, namely the deposition of Plaintiff (RCM Dec., Ex. 2), payroll checks (RCM Dec., Ex. 3), and Plaintiff's November 9, 2021, termination notice (RCM Dec., Ex. 31).

Such evidence clearly demonstrates that the operations of UPSA and UPS Freight were not interrelated (first prong) and, that contrary to a centralized control of labor relations, UPS Freight handled labor relations on an individual basis separate from UPSA (second prong). As to the third prong and the fourth prong, neither the record nor the Defendants' statement of undisputed material facts and Plaintiff's counterstatement of undisputed material facts are clear as to whether there was common management and common ownership between UPSA and UPS Freight. Even so, the *Cook* analysis still favors not finding that UPSA and UPS Freight to be a single employer, as caselaw is

clear that "the third and fourth factors – common management and common ownership – are, in particular, ordinary aspects of the parent-subsidiary relationship, which often may be of limited use in determining whether to treat two or more corporate affiliates as a single employer." *See Turley*, 774 F.3d at 156 n.4 (internal quotation marks and citation omitted). Moreover, the Court has already concluded that the evidence in the record indicates a lack of centralized control of labor relations, which the Second Circuit has held to be the "most significant" factor in deciding whether two corporate entities constitute a single employer. *Cook*, 69 F.3d at 1240-41. And, as discussed *supra*, there is a strong presumption that a parent corporate entity is not the employer of its subsidiary's employees. *Fenner v. News Corp.*, No. 09 Civ. 09832 (LGS), 2013 WL 6244156, at *9 – 12 (S.D.N.Y. Dec. 2, 2013) (noting that "[t]he presumption is that 'corporate personalities remain distinct'").

By offering such evidence in support of its motion for summary judgment, UPSA satisfies its burden of proof to show that USPA is not an employer alongside UPS Freight such that Plaintiff is now required to furnish evidence to raise "the existence of 'specific facts showing that there is a genuine issue for trial.'" *Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc.*, 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017). Plaintiff, in response, states that "Human Resources for all of UPS's companies were centralized and oversaw all UPS America subsidiaries." (Pltf.'s 56.1 ¶ 3.) Plaintiff further contends that the "interrelatedness was confusing" between UPSA and UPS Freight. (*Id*. ¶ 4.) Such responses are not sufficient to defeat UPSA's evidence that UPSA was not an employer of the Plaintiff, as they function only as a "[c]onclusory statement[], devoid of specifics, [which are] insufficient to defeat a properly supported motion for summary judgment." *Transflo Terminal Servs., Inc,* 248 F. Supp. 3d 397 at 399. As a result, the Court concludes that pursuant to the *Cook* analysis, UPSA and UPS Freight do not constitute a single employer and, by

extension, UPSA cannot be held liable for any purported discriminatory actions taken by UPS Freight employees that could constitute violations of the NYSHRL and ADA.

Because the Plaintiff has not adduced any evidence to rebut USPA's proof that USPA was not an employer of the Plaintiff, the Court must find there is no dispute of material fact as to whether USPA was an employer of the Plaintiff, and, therefore, there is no genuine dispute of material fact as to whether UPSA can be liable for any purported violations of the NYSHRL and ADA committed by UPS Freight employees. Thus, summary judgment is warranted and is granted in favor of UPSA as to Count 5 through Count 16.

**B.  2017 NYSHRL Claims against UPS Freight (Count 1 through Count 4)**

Plaintiff asserts four claims under the NYSHRL against UPS Freight stemming from purportedly discriminatory and retaliatory conduct taken by UPS Freight against Plaintiff in 2017, specifically UPS Freight removing Plaintiff from service in April 2017, and how UPS Freight handled Plaintiff's request for a reasonable accommodation in July 2017.

In order to state a claim for discrimination under the NYSHRL, a plaintiff must "show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, No. 13-CV-3038 (JG) (VMS), 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015). To state a claim for retaliation under the NYSHRL, a plaintiff must demonstrate that he "(1) was engaged in a protected activity, (2) that defendants knew of the protected activity, (3) that defendants took adverse employment actions against plaintiff, and (4) a causal connection between the protected activity and the adverse action." *LaSalle v. City of New York*, No. 13 CIV. 5109 (PAC), 2015 WL 1442376, at *6 (S.D.N.Y. Mar. 30, 2015).

a.  **Plaintiff's removal from service in April 2017 (Count 1 and Count 2)**

Plaintiff avers that UPS Freight discriminated and retaliated against him in violation of NYSHRL when, in April 2017, UPS Freight removed Plaintiff from service, specifically removing him from the operation of tractor trailers as a City Driver. (SAC ¶¶ 58-60.) Plaintiffs NYSHRL discrimination stemming from Plaintiff's removal fails as a matter of law as the record clearly establishes that UPS Freight had a legitimate, nondiscriminatory reason for the adverse action Plaintiff experienced, which Plaintiff is unable to rebut.

It is undisputed that Plaintiff, of his own accord, submitted medical documentation from Hudson River Neuropsychology detailing that Plaintiff suffered from forgetfulness, noting a significant drop in Plaintiff's verbal intellectual scale, indicating Plaintiff developed new stuttering issues, and recommending that Plaintiff receive "a neurological workup . . . including a seizure workup since there seem[ed] to be an indication in the medical record of paroxysmal episodes of disorientation." (Defs.' 56.1 ¶ 15.) Moreover, the report stated that "[u]ncontrolled seizure activity could lead to progressive deterioration of cognitive skills" and recommended testing to rule out "epileptiform" activity. (*Id*.) In other words, Plaintiff's own medical care team was clearly indicating that they were concerned he was suffering from seizure activity and that he was possibly on the verge of having an epileptic episode. (*Id*.)

In response to Plaintiff providing this information, Plaintiff did experience an adverse employment action, namely that UPS Freight temporarily removed him from service. (*Id*. ¶ 17.) However, Plaintiff's NYSHRL must fail as a matter of law because the record clearly establishes that UPS Freight took the adverse employment action for legitimate, nondiscriminatory reasons. Specifically, UPS Freight temporarily removed Plaintiff from his role as an operator of tractor trailers due to concerns about whether his medical conditions rendered him unable to safely operate

11

such vehicles. An employer's concerns about whether an employee can safely perform their job is sufficient to show a legitimate, non-discriminatory reason for adverse action taken under the NYSHRL. *Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 440 (N.D.N.Y. 2009).

Because UPS Freight has sufficiently offered a legitimate, nondiscriminatory reason, Plaintiff bears the burden to demonstrate that UPS Freight's reasons were false and that it was Plaintiff's disability that truly motivated UPS Freight to undertake the adverse action. *Clark v. Jewish Childcare Ass'n, Inc*., 96 F. Supp. 3d 237, 249 (S.D.N.Y. 2015). Presently, Plaintiff has failed to adduce any evidence that would demonstrate UPS Freight's April 2017 removal was motivated by discriminatory animus, except conclusory statements which are "insufficient to defeat a properly supported motion for summary judgment." *Transflo Terminal Servs., Inc*, 248 F. Supp. 3d 397 at 399. Accordingly, the Court must find that as a matter of law Plaintiff's NYSHRL discrimination claim predicated on Plaintiff's April 2017 removal fails, and thus grants summary judgment in favor of UPS Freight as to Count 1.

Regarding Plaintiff's NYSHRL retaliation claim predicated on Plaintiff's April 2017 removal, the Court likewise finds that such a claim fails as a matter of law. Here, Plaintiff has not proffered any evidence that he engaged in protected activity. Protected activity is defined as "action taken to protest or oppose statutorily prohibited discrimination." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309 (S.D.N.Y. 2020) (quoting *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012)). Here, it is undisputed that, without being asked to, Plaintiff provided medical records. (Defs.' 56.1 ¶ 15.) However, this does not constitute protected activity as Plaintiff was not "protest[ing] or oppos[ing] statutorily prohibited discrimination" and was only providing such records to get UPS Freight to "ease up" on him. (*Id*. ¶ 14); (Pltf.'s 56.1 ¶ 14.) Because Plaintiff did not engage in protected activity as it relates to his April 2017 removal, the Court must find that

Plaintiff's NYSHRL retaliation claim fails as a matter of law, and thus grants summary judgment in favor of UPS Freight as to Count 2.

    b. **Plaintiff's request for a reasonable accommodation in July 2017 (Count 3 and Count 4)**

Plaintiff's NYSHRL discrimination and retaliation claims brought forth under Count 3 and Count 4 stem from Plaintiff's request for an accommodation in July 2017 after his return-to-work following UPS Freight's removal of Plaintiff from service in April 2017. In order to state a claim for failure to accommodate under the NYSHRL, a plaintiff must show that "'(1) he is a person with a disability under the meaning of [the relevant statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation the employee could perform the essential functions of the job at issue; and (4) the employer refused to make such accommodations.'" *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).  Where an employer "has already taken (or offered) measures to accommodate the [plaintiff's] disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.' In other words, the plain reasonableness of the existing accommodation ends the analysis." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). An accommodation's reasonableness turns on whether the accommodation "enable[s] an individual with a disability who is qualified to perform the essential functions of that position . . . or to enjoy equal benefits and privileges of employment." *Id.* (quoting 29 C.F.R. § 1630.2(*o*)(1)(ii), (iii)).

    Here, the record plainly establishes that UPS Freight reasonably accommodated Plaintiff, meaning that Plaintiff's NYSHRL failure to accommodate claim fails as a matter of law. Plaintiff first applied for accommodations. (Pltf.'s 56.1 ¶ 18.) Plaintiff met with UPS Freight supervisors

13

on August 2, 2017, to go over an accommodation checklist. (*Id.*) The accommodation checklist stated that Plaintiff had difficulty remembering, that he would like to do repetitive tasks, that he required extra time to complete tasks and needed written instructions. (*Id.*) The ADA checklist indicated that Plaintiff did not identify any other jobs he could perform outside of the City Driver position. (RCM Dec., Exs. 8 and 9.) On August 9, 2017, UPS Freight advised Plaintiff that, beyond providing written instructions, it had not yet identified any accommodations that met Plaintiff's needs and stated that it would continue to look for potential reasonable accommodations. (Defs.' 56.1 ¶ 21.) Specifically, UPS Freight stated that it would conduct a six-month job search to discern a position in line with Plaintiff's accommodation request. (*Id.* ¶ 20.)

Thereafter, in January 2018, UPS Freight wrote to Plaintiff to discuss, as a reasonable accommodation, his transferring to work as a Road Driver, rather than a City Driver, which Plaintiff accepted. (*Id.* ¶ 24.) Plaintiff preferred to remain working as a City Driver. (*Id.* ¶ 27.) However, in the Road Driver position, Plaintiff continued to enjoy the same benefits he received as a City Driver and, in fact, was compensated at an even higher rate. (*Id.*) Likewise, Plaintiff continued to enjoy the same degree of seniority for the purposes of wage rates, benefits, layoff, recall rights and vacation benefits. (*Id.*)

Such undisputed facts clearly prove that UPS Freight took steps to reasonably accommodate Plaintiff's disability. The accommodation itself was reasonable as it allowed Plaintiff to enjoy "equal benefits and privileges of employment." *Int'l Bus. Machines Corp.*, 787 F.3d 89 at 94. While Plaintiff may have preferred an alternative accommodation, it is well established that an employer need not offer the employee's chosen accommodation to satisfy its obligations under the NYSHRL. *See Cosme v. Henderson,* 287 F.3d 152, 158 (2d Cir. 2002) (noting that "to avoid [liability], the employer need not offer the accommodation the employee prefers.

Instead, when any reasonable accommodation is offered, the statutory inquiry ends"); *see also Nieblas-Love v. New York City Hous. Auth.,* 165 F. Supp. 3d 51 (S.D.N.Y. 2016). Thus, because the record clearly establishes that UPS Freight reasonably accommodated Plaintiff, the Court must find that Plaintiff's NYSHRL discrimination claim fails as a matter of law and grants summary judgment in favor of UPS Freight as to Count 3.

Under Count 4, Plaintiff appears to fashion another NYSHRL retaliation claim, asserting that UPS Freight retaliated against him for requesting a reasonable accommodation in July 2017 by way of removing him from work in November 2017. (SAC ¶ 134.) This claim similarly falls short, as Plaintiff does not offer any evidence to demonstrate that he suffered an adverse action as a consequence of engaging in protected activity under the NYSHRL. (Pltf.'s 56.1 ¶ 18). While Plaintiff was removed from work following his request for a reasonable accommodation, the record clearly proves that Plaintiff was removed for cause – for failure to, among other infractions, follow direct instructions from his direct manager. (*Id*. ¶ 21.) Therefore, because the undisputed facts indicate that Plaintiff was removed from his position for failing to adhere to UPS Freight policies and regulations, and, if anything, also point to UPS Freight's thorough efforts to accommodate Plaintiff's disability, Plaintiff's NYSHRL retaliation claim under Count 4 fails as a matter of law, and summary judgment is granted in favor of UPS Freight as to Count 4.

**C.  2021 NYSHRL and ADA Claims against UPS Freight (Count 17 through Count 20)**

Plaintiff asserts four claims (two NYSHRL claims and two ADA claims) against UPS Freight stemming from purportedly discriminatory and retaliatory conduct taken by UPS Freight against Plaintiff in 2021 and in 2022. There are three relevant incidents:  UPS Freight's termination of Plaintiff in November 2021, and disciplinary notices Plaintiff received from UPS Freight in December 2021 and January 2022.

The requirements to state a NYSHRL claim for discrimination and a NYSHRL claim for retaliation have been discussed *supra*. To state a claim for discrimination under the ADA, a plaintiff must show "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodations; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). To effectuate a claim for retaliation under the ADA, a plaintiff must show that "[]he engaged in protected participation or opposition under [the ADA], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223 (2d Cir. 2001).

Plaintiff's claims for discrimination under the NYSHRL and ADA fail for the same reason – any purported adverse action Plaintiff experienced was not by reason of his disability. Regarding Plaintiff's November 2021 termination, the record clearly establishes that such termination was for cause – was due to the fact that Plaintiff crashed into a barrier, did not report the crash to management, drove for at least 20 more miles with a wheel that was severely damaged, and then improperly reported the crash to an hourly employee instead of his manager. (Defs.' 56.1 ¶¶ 54-57); (Pltf.'s 56.1 ¶¶ 54-57.) Plaintiff even admits that he was terminated for failure to report the accident. (Pltf.'s 56.1 ¶ 59.) Thus, Plaintiff's November 2021 termination cannot serve as the basis for viable discrimination claims under the NYSHRL and the ADA.

The disciplinary notices Plaintiff received in December 2021 and January 2022 are similarly unable to sustain discrimination claims under the NYSHRL and ADA. Plaintiff received

a disciplinary notice in December 2021 after Plaintiff did not follow the mandated route for his driving and for failing to make a stop along his route. (Pltf.'s 56.1 ¶¶ 61-62.) Then, in January 2022, Plaintiff received a disciplinary notice after the Connecticut Department of Motor Vehicles Commercial Vehicle Safety Division inspected Plaintiff's vehicle in Tolland, Connecticut, and found that Plaintiff was driving with an expired inspection sticker, that Plaintiff failed to maintain blank logbooks required by Department of Transportation regulations, and that Plaintiff failed to certify his electronic logging device. (Pltf.'s 56.1 ¶¶ 64-65.) Plaintiff does not dispute being responsible for the conduct that he was charged with committing under the December 2021 and January 2022 disciplinary reports. (*Id*. ¶¶ 66-67.) Therefore, the record plainly establishes as undisputed fact that Plaintiff received said disciplinary notices for cause and not due to Plaintiff's disability; as a result, the December 2021 and January 2022 disciplinary notices cannot sustain Plaintiff's NYSHRL and ADA discrimination claims. Accordingly, the Court must find that Plaintiff's NYSHRL and ADA discrimination claims predicated on the November 2021 termination, and the December 2021 and January 2022 disciplinary notices fail as a matter of law and grants summary judgment in favor of UPS Freight as to Count 17 and Count 19.

By extension, because the Court concludes that Plaintiff's November 2021 termination and December 2021 and January 2022 disciplinary notices were motivated solely by legitimate, non-discriminatory reasons, such adverse actions cannot be characterized as retaliatory as needed for Plaintiff to state retaliation claims under the NYSHRL and the ADA. The record only shows that the action taken by USP Freight in November 2021, December 2021 and January 2022 reflect "[nothing] other than [UPS Freight's] enforcement of its preexisting disciplinary policies in a reasonable manner." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2d Cir.

2014). Thus, Plaintiff's retaliation claims under the NYSHRL and the ADA fail as a matter of law, and the Court must grant summary judgment in favor of the UPS Freight as to Counts 18 and 20.

## CONCLUSION

For the foregoing reasons, Defendants United Parcel Service of America, Inc's motion for summary judgment and UPS Freight, Inc.'s motion for summary judgment are GRANTED.

The Clerk of Court is kindly directed to terminate the motions at ECF Nos. 190 and 192, to enter judgment in favor of Defendants United Parcel Service of America, Inc., UPS Freight, Inc. and TForce Freight, Inc. and against Plaintiff, and to terminate the instant action.

Dated:    June 24, 2025                                    SO ORDERED:
          White Plains, New York

_____
          NELSON S. ROMÁN
          United States District Judge